UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| JOSE G.,[1]<br><br>   Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security<br>Administration,[2]<br><br>   Defendant. | Case No. 1:22-cv-00300-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the

Commissioner's denial of his application for a period of disability and disability

insurance benefits.[3] (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 14, 16, 20.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul. Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

[3] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g). As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

**MEMORANDUM DECISION AND ORDER - 1**

Having carefully reviewed the parties' memoranda and the entire administrative record (AR), the Court will reverse and remand the decision of the Commissioner for the reasons set forth below.

## BACKGROUND

On July 23, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, claiming disability beginning December 5, 2013. At the time of the alleged onset date of December 5, 2013, Plaintiff was fifty-six years of age. (AR 65.)

The application was denied initially and on reconsideration, and a telephonic hearing was conducted on July 1, 2021, before Administrative Law Judge (ALJ) David Willis.[4] After considering testimony from Plaintiff and a vocational expert (VE), the ALJ issued a decision on September 1, 2021, finding Plaintiff had not been under a disability since December 5, 2013, the alleged onset date, through December 31, 2017, the Plaintiff's date last insured. (AR 14 – 26.) The ALJ determined that, through the date last insured, Plaintiff was capable of performing his past relevant work as a parking enforcement officer. (AR 25.)

Plaintiff timely requested review by the Appeals Council, which denied his request for review on May 23, 2022. (AR 1 – 7.) Plaintiff timely appealed this final decision to

---

[4] There was a prior hearing held by telephone on February 4, 2021. (AR 35.) At that hearing, there was a miscalculation of Plaintiff's Title II date last insured, such that the ALJ conducted a supplemental hearing on July 1, 2021. (AR 35.) At both hearings, Plaintiff was represented by a non-attorney representative. (AR 15.)

**MEMORANDUM DECISION AND ORDER - 2**

the Court on July 20, 2022. (Dkt. 1.) The Court has jurisdiction to review the ALJ's

decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a

preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist that supports Plaintiff's

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if

there is substantial evidence to support the decision of the Commissioner, the decision

must be upheld even when the evidence can reasonably support either affirming or

reversing the Commissioner's decision, because the Court "may not substitute [its]

judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following issues are raised on appeal:

1.    Whether the ALJ's finding that Plaintiff could return to his past relevant work as an parking enforcement officer is in error because the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles;

2.    Whether the ALJ erred because he did not properly evaluate the opinions of Adam Brotman, Psy.D., and Suzanne McConnaughey, D.O.

No other issues are raised by Plaintiff on appeal.

### A.    The ALJ's Analysis

When evaluating the evidence presented at an administrative hearing, the ALJ must follow a five step sequential process in determining whether a person is disabled, or continues to be disabled, within the meaning of the Social Security Act. 20 C.F.R. § 404.1520, 404.1594, 416.920, 416.994.[5] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 5, 2013, through the date last insured of December 31, 2017. (AR 17.) At step two, the ALJ found

---

[5] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff had the following medically determinable, severe impairments through the date last insured: "diabetes mellitus; carpal tunnel syndrome; and osteochondral defect of the medial left ankle." (AR 17.)

At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 416.920(d), 416.925 and 416.926. Here, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments which met or were medically equal to Listing 1.18, Abnormality of a major joint in any extremity, and Listing 9.00B(5), the preamble for endocrine disorders, as well as SSR 14-2p.

At step four, the ALJ found that, through the date last insured, Plaintiff retained the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except for the following limitations:

> The clamant can sit for six hours and stand/walk for six hours. The claimant could lift/carry twenty pounds occasionally and ten pounds frequently, which are the lift/carry restrictions of light work. He could push/pull as much as he could lift/carry. The claimant could occasionally reach overhead to the left and right. He could occasionally stoop, crouch, and climb ramps/stairs but never climb ladders, ropes, or scaffolds. Additionally, the claimant could never have worked at in vibration, [sic] at unprotected heights, or with moving mechanical parts.

(AR 20.) Relying upon testimony from a vocational expert, the ALJ assessed that, through the date last insured, Plaintiff retained the RFC to perform his past relevant work

**MEMORANDUM DECISION AND ORDER - 5**

as a parking enforcement officer. (AR 25.)[6] The ALJ therefore did not proceed to step

five. The ALJ concluded Plaintiff was not disabled at any time from December 5, 2013,

the alleged onset date, through December 31, 2017, the date last insured. (AR 25.)

### B.     Conflict Between the VE Testimony and the Dictionary of Occupational Titles

Plaintiff contends that the ALJ erred because he failed to inquire whether the VE's

testimony conflicted with the Dictionary of Occupational Titles (DOT). Plaintiff insists

that the RFC restriction limiting Plaintiff to reaching overhead to the left and right

occasionally conflicts with the DOT's definition of parking enforcement officer. The job

requires "frequent reaching," yet the VE testified that a person could work as a parking

enforcement officer despite being limited to occasional reaching overhead bilaterally. Ar

50 – 51.) Accordingly, Plaintiff asserts that the VE's testimony conflicted with the DOT

and the conflict was not sufficiently addressed by the ALJ or the VE. Defendant, on the

other hand, insists that the ALJ resolved any potential conflicts between the VE's

testimony and the DOT, because it is unlikely and unforeseeable that a job requiring

frequent reaching necessarily includes overhead reaching.

The ALJ may rely on an impartial vocational expert to provide testimony about

jobs the applicant can perform despite his or her limitations. *Hill v. Astrue*, 698 F.3d

1153, 1161 (9th Cir. 2012). The DOT details the specific requirements for different

---

[6] Plaintiff testified at the hearings before the ALJ that he worked in parking enforcement at a parking booth in front of the student center at Boise State University. (AR at 37, 54, 77.) He would take money, and place tickets on vehicles parked illegally. (AR 54, 55.) Plaintiff did not elaborate on the reaching requirements, nor did Plaintiff's council elicit the same.

**MEMORANDUM DECISION AND ORDER - 6**

occupations. If the VE's opinion that a claimant is able to work conflicts with, or seems to conflict with, the requirements listed in the DOT, the ALJ must ask the VE to reconcile the conflict before relying on the VE's testimony to decide if the claimant is disabled. SSR 00-4P, 2000 WL 1898704, at *2 (2000).

The DOT describes a parking enforcement officer as someone who:

> Patrols assigned area, such as public parking lot or section of city, to issue tickets to overtime parking violators. Winds parking meter clocks. Surrenders ticket book at end of shift to supervisor to facilitate preparation of violation records. May report missing traffic signals or signs to superior at end of shift. May chalk tires of vehicles parked in unmetered spaces, record time, and return at specified intervals to ticket vehicles remaining in spaces illegally. May collect coins deposited in meters. When patrolling metered spaces, may be known as Meter Attendant (government ser.).

DICOT 375.587-010 (4th Ed., Revised 1991), 1991 WL 673163. Reaching is required "frequently, from 1/3 to 2/3 of the time." *Id.*

Here, the only challenge is whether a hypothetical person such as Plaintiff, who was limited to occasionally reaching overhead to the left and right, could perform the tasks required of a parking enforcement officer. Plaintiff does not challenge the ALJ's implicit finding that Plaintiff retained the ability to push/pull, and to reach in front or to

either side.[7] The ALJ asked the VE whether someone limited to a light exertional level

with the ability to reach overhead bilaterally at the occasional level could perform

Plaintiff's past relevant work as a parking enforcement officer. (AR 50.) The VE opined

Plaintiff could work as a parking enforcement officer, referencing DOT No. 375.587-010.

(AR 50, 51.)

The ALJ asked whether there were any elements of the hypothetical that may not

have been addressed in the DOT. (AR 52.) The VE stated that the ALJ covered the areas

not detailed or addressed within the DOT to include "unprotected heights and moving

mechanical parts," and that his testimony regarding "those areas not covered by or not

addressed by the DOT are based on over 30 years' experience as a vocational

rehabilitation counselor." (AR 52.) The ALJ next specifically asked the VE whether the

VE's opinion was consistent with the description of parking enforcement officer set forth

in the DOT. The VE answered that it was. (AR 53.) After considering all of the evidence

in the record, the ALJ determined that Plaintiff could successfully return to his past

relevant work as a parking enforcement officer and was therefore not under a disability

during the period between his onset date and date last insured. (AR 20 – 25.)

Plaintiff argues that, because the DOT clearly indicates the occupation of parking

---

[7] At the July 1, 2021 hearing, Plaintiff's representative posed a hypothetical further limiting an individual to "occasional handling and fingering with the dominant right upper extremity" and "occasional reaching forward and laterally," meaning directly in front and to the sides at the same elevation as the shoulder. (AR 55.) The VE testified that, if a hypothetical individual were further limited in that manner, he would not be able to perform work as a parking enforcement officer. (AR 55.) Here, however, the RFC does not incorporate any reaching limitations other than overhead, and Plaintiff does not challenge any other aspect of the RFC.

**MEMORANDUM DECISION AND ORDER - 8**

enforcement officer requires frequent reaching, the ALJ erred at step four by not asking the ALJ more specific questions regarding Plaintiff's ability to perform the job if he was limited to occasionally reaching overhead to the left and right. Similar to the question before the court in *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016), resolving this issue requires the Court "to determine whether overhead reaching is such a common and obvious part" of working as a parking enforcement officer such that "the ALJ should have recognized a conflict and questioned the expert more closely before concluding" that Plaintiff could perform this work. *Gutierrez*, 844 F.3d at 807. This is a "fact-dependent" inquiry. *Id.* at 809.

"For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808. In *Gutierrez*, the court considered whether there was a conflict between the DOT's listing of job requirements for Cashier II, which required the ability to "reach frequently," and the ALJ's conclusion that the plaintiff, whom the ALJ limited to no overhead reaching with her right arm, could work as a cashier. The court explained that the ALJ did not err, "because there was no apparent or obvious conflict" between the VE's testimony that the claimant could perform work as a cashier, despite her overhead reaching limitations with her right arm, and the DOT's general statement that cashiering requires frequent reaching. 844 F.3d at 808.

**MEMORANDUM DECISION AND ORDER - 9**

The court in *Gutierrez* explained that, although reaching "connotes the ability to extend one's hands and arms 'in any direction,' SSR 85-15, 1985 WL 56857, at *7 (1985), not every job that involves reaching requires the ability to reach overhead." *Id.* The court relied upon common experience, stating that "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id.* Therefore, the court concluded that, given "how uncommon it is for most cashiers to have to reach overhead," there was no "apparent or obvious conflict" between the VE's testimony and the DOT. *Id.*

Following *Gutierrez,* the circuit court in *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017), decided that it could not rely upon common experience to resolve whether there was an apparent conflict between the VE's testimony and the DOT. There, the claimant was limited to occasional handling, fingering, and reaching overhead with his left, non-dominant hand and arm, with no limitations on his right side. The VE opined the claimant could still work as an office helper, mail clerk, or parking lot cashier, even though the DOT stated these jobs required "frequent handling, fingering, and reaching." 865 F.3d at 1203. In *Lamear*, the VE did not explain how the plaintiff could do this work with his left hand and arm limitations, and the ALJ never asked the VE to reconcile any potential inconsistency between the plaintiff's manipulative limitations and the DOT's job description.

The court in *Lamear* held that, contrary to the facts in *Gutierrez*, "we cannot say that, based on common experience, it is likely and foreseeable that an office helper, mail

**MEMORANDUM DECISION AND ORDER - 10**

clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." *Id.* at 1205. The court reviewed the DOT's descriptions for the jobs identified, finding that they "strongly suggest that it is likely and foreseeable that "using both hands would be necessary to perform 'essential, integral, or expected' tasks," such as "opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change" in an acceptable and efficient manner. *Id.* Because no inquiry as to an apparent conflict occurred, the court remanded the case to permit the ALJ to follow up with the VE. *Id.* at 1207.

Here, Plaintiff insists that the facts are similar to those in *Lamear*, and it was therefore impossible for the ALJ to ascertain from the DOT description whether a person could perform the responsibilities of parking enforcement officer without the ability to reach overhead bilaterally on more than an occasional basis. The Court disagrees, and finds the facts here more closely align with those in *Gutierrez* rather than those in *Lamear.* Unlike *Lamear*, the issue here concerns Plaintiff's ability to reach overhead bilaterally, as opposed to handling, fingering, and feeling. The ALJ did not find that Plaintiff had limitations with handling, fingering and feeling, or reaching in front or to either side. Similar to the example used in *Gutierrez*, anyone who has exited a parking garage and handed cash or a debit card and their parking ticket to an attendant sitting in a booth, knows that the typical parking attendant does not have to reach overhead frequently. They do, however, need to handle paper and other objects, like cash, credit cards or parking tickets, and must be able to reach in front and to the side.

**MEMORANDUM DECISION AND ORDER - 11**

The Court finds that common experience would not require parking enforcement officers stationed in a parking booth to reach overhead, and therefore concludes that there was no apparent or obvious conflict between the VE's testimony and the DOT in this case. The VE responded to the ALJ's hypothetical question accounting for Plaintiff's limitations regarding reaching overhead, and determined he could perform his past relevant work as a parking enforcement officer. The ALJ was entitled to rely on the VE's experience to account for a particular job's requirements, and the Court finds the ALJ correctly did so here. *Gutierrez*, 844 F.3d at 809.

### C.    Medical Opinions

Plaintiff argues that the ALJ failed to evaluate the opinions of Adam Brotman, Psy.D., and Suzanne McConnaughey, D.O. Dr. Brotman treated Plaintiff, and provided a treating source statement on December 22, 2020. (AR 4602, 5803.) The ALJ did not consider Dr. Brotman's opinions persuasive, because Dr. Brotman did not address Plaintiff's mental health condition and associated limitations during the relevant time period between Plaintiff's onset date and date last insured. (AR 24.) The ALJ noted that Dr. Brotman did not meet with Plaintiff until August of 2019, which was well past the date last insured of December 31, 2017. The ALJ also did not find Dr. Brotman's opinion persuasive, because Dr. Brotman had seen Plaintiff only sporadically since August 2019, and Plaintiff's mental health symptoms present during the period prior to the date last insured stabilized during hospitalization for treatment of the same. (AR 24.)

Dr. McConnaughey also treated Plaintiff, and provided a treating source statement

**MEMORANDUM DECISION AND ORDER - 12**

on February 8, 2021. (AR 5084 – 5087.) The ALJ did not mention Dr. McConnaughey's opinion at all in the written decision. (AR 23 – 25.) Plaintiff contends both opinions relate back to the relevant period considered by the ALJ, and thus it was error to reject Dr. Brotman's opinion, and to fail to mention Dr. McConnaughey's opinion.

Defendant argues that the ALJ was not required to consider either opinion, because both post-dated the date last insured; the doctors discussed Plaintiff's functioning in the present tense; and, the doctors did not review records or treat Plaintiff during the relevant period. Accordingly, Defendant argues the opinions were not relevant to the period at issue before the ALJ, and any failure to consider Dr. McConnaughey's opinion also was harmless error. (*See* AR 5079 – 84; 5085 – 87.)

Medical evaluations made "after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). Thus, it is impermissible to reject medical opinions based solely on the fact they were rendered after the date last insured. *Yolanda P. v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00721-YY, 2020 WL 4504699, at *7 (D. Or. Aug. 5, 2020). However, the opinion evidence must concern the claimant's medical condition during the relevant time period. *Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988).

Concerning Dr. Brotman's physician source statement, the Court finds no error. The ALJ discussed Plaintiff's mental health treatment during 2013. (AR 18.) While Plaintiff alleged disability based upon major depressive disorder, the ALJ noted the

**MEMORANDUM DECISION AND ORDER - 13**

medical evidence during the relevant period did not show findings that would have caused significant work-related functional limitations. (AR 18.) The ALJ discussed Plaintiff's psychiatric hospitalization from December 10 to December 13, 2013,[8] but noted the record showed "little, if any, evidence of subsequent mental health-related treatment" during the relevant period and no ongoing treatment with a mental health provider. (AR 18.) Accordingly, the ALJ did not consider Plaintiff's depression to cause anything other than mild limitations in mental functioning. Plaintiff made no challenge to the ALJ's findings at step two.

Dr. Brotman's report recounts that Plaintiff had suffered from depressive symptoms since adolescence,[9] but clarified that Plaintiff reported depressive symptoms "over the time [Dr. Brotman has] known him." (AR 5079.) There is no indication Dr. Brotman reviewed the medical evidence pertaining to the period between Plaintiff's onset date and his date last insured, and no indication that Dr. Brotman's opinions relate back to that period. While Plaintiff's depression may have worsened after December 31, 2017, any deterioration in his condition after that time is irrelevant. *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971). Upon a review of the record, the Court finds the ALJ provided legally sufficient reasons for discounting Dr. Brotman's medical opinion, and properly supported his finding that the opinion was not persuasive.

Dr. McConnaughey, a specialist in internal medicine and a board certified Doctor

---

[8] The hospitalization occurred after the alleged onset date of December 5, 2013.
[9] Dr. Brotman did not mention Plaintiff's psychiatric hospitalization in 2013.

**MEMORANDUM DECISION AND ORDER - 14**

of Osteopathy, stated she began treating Plaintiff on November 29, 2018, and that she had

seen him eighteen times through February 8, 2021. (AR 5084.) Dr. McConnaughey

assessed several physical limitations based upon Plaintiff's diabetes, bilateral knee pain,

left ankle joint pain, bilateral carpal tunnel syndrome, bilateral shoulder joint pain, back

pain, and other physical conditions. (AR 5084 - 5088.) The ALJ found three of these

medical conditions severe impairments through the date last insured – diabetes, left ankle

joint pain, and bilateral carpal tunnel syndrome.[10] (AR 17.)

The physical limitations Dr. McConnaughey assessed and which arguably relate to

Plaintiff's left ankle joint pain, bilateral carpal tunnel syndrome, and diabetes may have

directly impacted the ALJ's evaluation of Plaintiff's RFC. Dr. McConnaughey opined

Plaintiff would not be able to meet the lifting, carrying, walking, standing, or sitting

requirements of either light or sedentary work, and that Plaintiff would be absent from

work more than four times each month due to his impairments. (AR 5084 – 5088.)

Concerning his ability to use his hands and upper extremities, Dr. McConnaughey was of

the opinion that Plaintiff would "rarely" be able to reach overhead, handle, finger, feel, or

push/pull. (AR 5086.) She also expressed her opinion that Plaintiff would "rarely" be

able to use foot controls, and would "never" be able to stoop, crouch, climb stairs, or

---

[10] Relevant here are examination notes dated August 5, 2020, wherein Dr. McConnaughey examined Plaintiff's hands, finding diminished flexion of the lesser digits of both hands and voluntary guarding with pain. (AR 5122.) Dr. McConnaughey had "not seen his original EMG from 2013 to know what, if any, change there has been compared to preoperative test." (AR 5122.) By ignoring Dr. McConnaughey's opinions and notes, the ALJ failed to address whether Plaintiff's condition worsened or simply never improved. Examination of the evidence in the record concerning Plaintiff's bilateral carpal tunnel syndrome, and its effect on his ability to meet the demands of light work, is relevant here, as are Dr. McConnaughey's opinions and treatment notes regarding the same.

**MEMORANDUM DECISION AND ORDER - 15**

climb ramps. (AR 5087.)

An ALJ cannot entirely disregard a treating physician's opinions, and cannot disregard them based solely on when they were rendered. *Smith*, 849 F.2d at 1226. Here, it appears the ALJ recognized this, because he considered Dr. Brotman's opinions which were rendered after the date last insured. However, the ALJ failed to mention Dr. McConnaughey's opinions entirely. Defendant offers other reasons to support why the ALJ could have rejected Dr. McConnaughey's opinions, contending the opinions were not significant or probative of Plaintiff's condition during the period prior to his date last insured. This argument is unavailing, because the Court may not uphold an ALJ's decision on a ground not actually relied upon by the ALJ. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Nor can the Court conclude the error is harmless here. The error is that the ALJ failed to acknowledge the opinion of Dr. McConnaughey at all when the ALJ was legally required to do so. In this case, because Dr. McConnaughey treated Plaintiff for three of the conditions the ALJ considered severe at step two, and Dr. McConnaughey's opinions could have impacted the ALJ's analysis of Plaintiff's ability to stand, walk, push, pull, reach, handle, finger, feel, stoop, crouch and climb ramps and stairs, the Court finds it was error for the ALJ to fail to discuss Dr. McConnaughey's opinions.

Remand is therefore warranted on this basis.

**MEMORANDUM DECISION AND ORDER - 16**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)      The decision of the Commissioner of Social Security is **REVERSED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42

U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: April 19, 2023

_____
Honorable Candy W. Dale
United States Magistrate Judge